IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Clyde Raulston, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) ) Case No. 03:06-cv-003 |
| Don Redmann, Warden, James River Correctional Center, | ) ) ) ) |
| Respondent. | ) ) |

**REPORT AND RECOMMENDATION**

Before the court is Clyde Ralston's petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. #1). The court previously conducted a preliminary review of the petition and ordered respondent served. The court also ordered respondent to file all relevant state records, including docket sheets, court orders, opinions, and transcripts. Respondent filed 26 documents from the state court record. Respondent answered the petition and separately moved to dismiss (Docs. #4, #5). Raulston did not respond to the motion to dismiss. The magistrate judge **RECOMMENDS** Raulston's petition (Doc. #1) be **DENIED** with prejudice and respondent's motion to dismiss be **GRANTED** (Doc. #5).

BACKGROUND

On December 20, 2005, the North Dakota Supreme Court affirmed denial of Raulston's request for post-conviction relief and motion for reduction of an illegal sentence. See State v. Raulston, 2005 ND 212, 707 N.W.2d 464. The summary contained in the opinion by the North Dakota Supreme Court accurately reflects the history of this case:

> Raulston pled guilty to interference with an emergency call and aggravated assault. Criminal judgments were entered on December 10, 2004, at

1

>which time Raulston was to begin serving a three-year prison sentence with all but 60 days suspended.  Raulston was not immediately incarcerated.
>
>During the period before he began serving his sentence, Raulston violated several probation conditions, including failing to report for incarceration, consuming alcohol, and violating a no-contact order.  A hearing was held on December 17, 2004, to address the violations.  At the hearing, the district court explained the minimum and maximum penalties of the underlying convictions and informed Raulston of the possible consequences of an admission.  Raulston then admitted the probation condition violations without benefit of a plea agreement.
>
>The court sentenced Raulston to five years imprisonment, three and one-half years suspended, and stated at the close of the hearing, "Who knows, you might be out — back here in eight, nine months if you go through the process right."  A recommendation was made that Raulston be placed in the Tompkins Rehabilitation and Corrections Unit ("Tompkins") for alcohol treatment.
>
>Raulston subsequently learned his aggravated assault conviction required him to serve 85 percent of the 18-month sentence, rendering him ineligible for placement at Tompkins. He promptly applied for post-conviction relief, arguing that neither his guilty pleas nor his probation violation admissions were knowingly, intelligently, and voluntarily entered and that he was denied effective assistance of counsel.  He additionally moved for reduction of an illegal sentence under Rule 35, N.D.R.Crim.P.  His application and motion were denied.  This appeal followed.

Id. at ¶2-¶5.

## PETITION FOR HABEAS CORPUS RELIEF

Habeas corpus provides state prisoners the exclusive federal remedy for challenges to the fact or duration of their confinement.  Franklin v. Webb, 653 F.2d 362, 363 (8th Cir. 1981) (citing Preiser v. Rodriguez, 411 U.S. 500 (1973).  Section 2254(b)(1), 28 U.S.C., provides:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>(A) the applicant has exhausted the remedies available in the courts of the State; or
>(B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The doctrine of exhaustion dictates that "as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to

act." Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995) (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)). Raulston raises the following issues in his habeas petition: (1) his guilty plea and subsequent probation violation admission were not knowingly, intelligently, and voluntarily entered and (2) he was denied effective assistance of counsel. Both of these issues were raised and addressed by the state court. Thus, Raulston has met the exhaustion requirement. His petition is also timely under the one-year statute of limitations for filing federal habeas petitions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). See 28 U.S.C. 2244(d)

A federal court cannot grant habeas relief on any claim adjudicated on the merits in state court proceedings, unless adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Contrary to" established federal law applies when the state court's decision is opposite that reached by the Supreme Court on a question of law or the state court's case involves a set of facts materially indistinguishable from a Supreme Court case, but the state court arrives at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). "Unreasonable application" of federal law applies "if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

This court cannot grant habeas relief on either of the grounds Raulston alleges in his petition because the claims do not qualify under any exceptions found in 28 U.S.C. § 2254(d). Raulston first argues his guilty plea and subsequent probation violation admission were not knowingly, intelligently, and voluntarily entered. The facts and evidence in this case contradict this argument. The transcripts demonstrate the state court judge clearly explained the possible consequences for Raulston, during both his original guilty plea and his admission of the probation violations. Raulston argues he "was not warned that one of the potential consequences of violating the suspended sentence imposed was that he could ultimately be sentenced to the penitentiary and required to serve 85% of any such sentence imposed without benefit of parole." Doc. #1 (Raulston's habeas petition). While the judge did not specifically mention the 85% requirement during the change of plea hearing, the transcript clearly demonstrates that he explained to Raulston the potential for a 10 year sentence. The judge stated:

> [Court]     All right. Mr. Raulston, pursuant to this agreement you now have two charges, they are both C Felonies. There is the interference with a telephone call, this new one, plus the old one of aggravated assault. Now, that one has been amended now, so that does not have the minimum mandatory two years, but it is also still a C Felony, which means it still could be up to five years and $5,000. Both of these could be added together for up to ten years and $10,000. It's important to remember that, because the–you are gonna be under supervised probation under these conditions here if that's accepted, and if there [are] violations you still could be brought back in and sentenced to up to the maximum penalty. Do you understand what the agreement is that the lawyers have said?
>
> [Raulston]    Yes, your Honor.

Doc. #3-22 (transcript of change of plea hearing). Similarly, the judge explained the possible results if Raulston admitted the probation violations.

> [Court]     Choice number one is just say don't do it again and leave everything as it is.

> Choice number two is I could take any portion of your jail or fine that was suspended and make you pay any portion of that fine or any—serve any portion of that jail.
>
> Lastly, I can go the original sentence and sentence you up to the maximum penalty that's allowed on either of these offenses. That means five years of imprisonment on each for a total of ten years imprisonment is possible. Ten thousand dollars, meaning $5,000 for each is possible.
>
> These are felony charges, so your probation could be continued for an up to an additional five years. Your probation, if it is extended or if it is–if it's continued, could be under the same conditions as before or new conditions modified.

See Doc. #3-23. When Raulston said he had not talked to his attorney about these possibilities, the court took a recess so Raulston could confer with counsel. Id. The judge then asked Raulston if he "heard what the consequences could be" upon admission of the violations. Id. Raulston stated he did. Id.

Raulston cites the trial judge's statement at the conclusion of the hearing as support for the argument that his guilty plea and probation violations admission were not knowingly, intelligently, and voluntarily entered. The judge stated:

> Five years at Department of Corrections, 18 months to serve. Credit for 11 days. Three and a half years suspended for three years from release with all the same terms and conditions of probation. . . . I will join in the State's recommendation for Tompkins and for anger management and ask that those be placed in the judgment so that they'll get you into those tracks as soon as you can. Who knows, you might be out—back here in eight, nine months if you go through the process right.

Doc. #3-23. This court interprets this statement as the judge's attempt at encouraging Raulston to work on his admitted alcohol and anger problems while incarcerated. Raulston had already admitted the violations when the judge made this statement. The judge did not promise Raulston he would only serve 8 or 9 months nor did he promise Raulston would be placed at the Tompkins Rehabilitation Unit. The state appellate court thoroughly considered and rejected

Raulston's argument that his guilty plea and probation violation admission were not knowingly, intelligently, and voluntarily made.  There is simply no basis for habeas relief on this ground.

Raulston also alleges he was denied effective assistance of counsel because his attorney did not inform him of the 85% requirement and urged him to admit the violations because he would be sent to the Tomkins Rehabilitation Unit for substance abuse treatment.  To be successful on a claim for ineffective assistance of counsel, Raulston must show his counsel's performance was deficient and because of that his defense was prejudiced.  Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Sera, 267 F.3d 872, 874 (8th Cir. 2001).  Petitioner must show that his counsel's errors were so deficient that he was not afforded a fair and reliable trial.  Strickland, at 687.  Representation is deficient if it "fell below an objective standard of reasonableness." Id. at 688.  In making this determination of reasonableness the court must take into consideration all circumstances and make all efforts to eliminate the "distorting effects of hindsight." Id. at 689.  Further, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  Counsel's decisions are presumed reasonable and "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable. . . . " Id.  The burden of proving ineffective assistance of counsel lies with petitioner.  Id.  Petitioner must prove that counsel's representation did not fall within the range of sound defense strategy.  Sera, 267 F.3d at 874.

The record in this case does not demonstrate Raulston received ineffective assistance of counsel at any stage of the proceedings.  When Raulton pled guilty, the parties had agreed to a 60 day sentence.  However, the state opposed Raulston's proposal to serve the 60 days over a course of 30 weekends. His attorney argued for and secured an agreement by which Raulston–facing a possible 10 year prison sentence–would serve in jail over a period of 30 weekends.  Raulston then

failed to appear for his first weekend jail stay. When located, Raulston was in violation of a no-alcohol condition and a no-contact provision. The court finds no evidence in the record supporting Raulston's assertion he was denied the effective assistance of counsel at either the plea or violation hearings. Thus, Raulston has not met his burden to prove ineffective assistance of counsel. Accordingly, habeas relief on this ground is also denied.

For the foregoing reasons, it is **RECOMMENDED** that Raulston's § 2254 petition (Doc. #1) be **DISMISSED** with prejudice and respondent's motion to dismiss be **GRANTED** (Doc. #5). Pursuant to Local Rule 72.1(E)(4), any party may object to this recommendation within ten (10) days after being served with a copy.

Dated this 25th day of May, 2006.

Karen K. Klein
United States Magistrate Judge